Good morning, Paul Meadowbrook or Mr. McCallum. I'd like to address the pendant wrongful discharge claim, the state claim, which I believe to be the strongest claim for plaintiff and also the simplest. This is a claim essentially for retaliation for making a safety complaint. It's a common law claim. Boise argued in their reply that somehow this was barred because there was an adequate remedy. If you look at the court record, that was not an issue in the district court. It was not decided in the district court. It wasn't before the district court. We do cite the case, the Reddy Concrete case, which is a 2009 case. For the purposes, if the court wants to reach that question, despite the way it was raised, that it isn't the case. There's not an adequate remedy in the statute. The statutory wrongful discharge claim that existed at the time these events occurred. We're talking about 2005, basically. And the contention in this case below, as you'll notice, the magistrate judge, I think, takes a paragraph to dismiss the common law claim after discussing the ADA claim, which deals with a different issue. And just says, well, for the same reason I decided the other, the statutory claims, I'm denying this one. The only, I think, inference you can reasonably draw from that is she's talking about the factual predicate, because here we're talking about, was Mr. McCallum retaliated against because he filed a safety complaint? And the issues in the statutory claims, there was an issue of statute of limitations and also with the ADA claim where there's an administrative exhaustion requirement that was fulfilled. We made arguments about that, and I think they're valid. But on the common law claim, those issues don't exist because it's a two-year statute. So what was the adverse action in response to this, under this common law claim? The adverse action was that he was denied the right to positions. For example, the control position, I think you're aware, Emanuel. He had several positions he applied for. He had several positions. Their contention and the magistrate judge's decision was, oh, goodness, he was laid off because there was a bona fide reduction in positions. Well, it's true. There was a bona fide reduction in positions, the one he had at the time. Everyone knew those were going to be eliminated. And so what employees did in the interim, I mean, they knew most of the half, I guess, were going to be eliminated. So in the interim, Mr. McCallum tried to find a position that would work. Now, their contention is since his original position was going to be eliminated, no harm because he would have lost the position anyway. That's kind of like a, you know, Paul's graph case where you argue that, you know, what happened happened, but you don't talk about how come it happened. Well, the reason it happened was he didn't he wasn't placed. And then the question is, what is the evidence for that? Well, you have the evidence at the outset about he filed a complaint and he went to a hearing or had a referee come in and look at the case. He complained about the supervisor, Heaney, and then he was told he was being put in psychological care because he'd filed the complaint, all that evidence, which we cited in our brief. And then you get to Burns, who was the number two fellow at the plant. And we have in the record that he applied for a control position, for example. Before that, he was told by Burns, there are no jobs for you here. You're leaving. You know, that's what he said. And then Lupin, he's supposed to be interviewed for this position. I thought what he said is that those particular jobs that he was asking about were not suitable for him. I didn't understand it, Your Honor. I mean, I thought what he said was that he inquired about some specific jobs and he was told those jobs are not for you. That's quite different from saying there are no jobs for you here. You better leave. In an inquiry about specific jobs, specific jobs might not be for him for any number of reasons. They might not be for him because he's not interested, he's not qualified, whatever. But that's quite different from what you said, which is to say there are no jobs for you here. You've got to leave. That's not in the record. I think the statement in the record, Your Honor, is those positions are not for you. There wasn't a statement made you're not qualified for those positions. You do understand that those positions are not for you is quite different from saying there are no jobs for you here. You better leave, which is what you said. Yes, I agree with that. And to the extent I said that, I overstated that, Your Honor. Yes, I think so. I think overstating is the right word. But there's no jury here, you see. I understand that. What had occurred immediately before, the Lupin position, the supervisor, he was scheduled for an interview. He was denied the interview. And Lupin said, yeah, I denied the interview because Burns said I'm giving the job to Taylor. And that was, according to Mr. McAllen's declaration, that happened immediately after he'd had this or shortly after he'd had the conversation with Burns about there's no position for you. I don't want to overstate that. Those positions aren't for you. And then, of course, you have the difference. I mean, there are all sorts of jobs available that not everybody's suited for. You know, if one of my law clerks, you know, after I said, you know, I'd like to stay on the court, I noticed you have a position for an IT manager or something of that sort. I said, well, you know, yeah, we have a job like that, but that position's not for you. You're not a computer person. You're a lawyer. That doesn't carry the implication that, you know, there are no jobs here for you. So I'm not sure why telling somebody who inquires about specific positions that those positions are not suitable, what inference you draw from that. Well, I think when you look at the fact that he was denied an interview, they don't deny he was qualified. He notes he was qualified. He was applying for jobs in which he had engineering training. The record reflects that he'd received a prize when he was doing an engineering job, saving $1 million. He was a well-respected engineer. And then you have all of the statements about what was going on between Burns and him and the HR director and him. Do we know anything about the other candidates, about the people who were interviewed? About Taylor, the job in question, we know that he actually had been disciplined for misconduct before he was placed in that job. What was the position again? What was the specific title? Let's see here. I believe it was called a process control engineer. I believe that's the July 11th. I think it's what I reflect here. And their response is, well, you can't consider Lupin's statement about that because it's hearsay. Well, it's admission against interest. I mean, he's the supervisor, and he's telling him why he didn't get the job. And they're not contending. He's not qualified for the job. And his record reflects that he was a qualified engineer before he was in the coordinator position, did an excellent job at that. His testimony is in the record that the reason he was switching, he was not going to try to keep in the coordinator position that was going to be reduced by half, is that he was an engineer. There weren't a lot of engineers in the company, and therefore he would have a much better shot at an engineering job because he was a licensed engineer as opposed to other people in coordinator jobs who had supervisor experience but really didn't have an engineering background. So is that the only job that he was denied that you're saying is the adverse employment action, or are there other jobs? Well, there were other jobs as well. I know there were several. Yes, there were. There was maintenance engineer and so on and so forth. I thought there were failures. He took an environmental engineer position in 2005, and the evidence was that Burns said, I mean, he controlled the process. He determined who was going to be on the interview team. When he applied for one of his other jobs, Webster interrupts his interview to say, don't mention Heaney. Well, Heaney was the one who assaulted him. He brought that up. It wasn't a job-related question. It wasn't prompted by anything that Mr. McCallum did. How is this disability-related? Pardon? How is this disability-related? Well, the disability issue, which is, of course, not related to the common law claim, deals with their perception, which reflected in the records, this man had a mental problem. A mental problem because it sounds like it started with, hey, you're a manager and your report is to OSHA. They sent him in. Immediately after that interview he had with the Oregon OSHA rep, where he identified Burns as one of the ones who was intimidating the staff and causing a safety issue and also complained about Heaney, said about Heaney, the question was, well, what happened to Heaney? And he turns to Roberts, the HR manager, and says, well, what did happen to Heaney? Heaney says, turn off the tape recorder. They turn off the tape recorder. He says, I'm not talking. He walks out. Shortly after that he says, you're going to go to this psych person. Well, first he puts him off work. They try to say it's voluntary. It wasn't voluntary. He was told he had to leave work to clear his head. That was after his interview with OSHA, and then they stuck him in there, and they tried to act like they were trying to assess his competence, but if you read what happens, he gets in there and Hurst, who's not his psychologist, just tells him I work for the company. I'm not your guy. I'm their guy. He demands to know why you – first of all, he tells him you're in here because you filed that complaint. What did you do that for? And that persists for about six weeks. Now they act like they just voluntarily stopped him because – I'm still waiting for an answer to my question. I'm not hearing it. How does this relate to disability? Well, the disability claim is based on the fact, on their contention, that this man was, as we see it, disabled because he was a nutcase because managers don't do what he did. All of these positions that he applied for were manager positions. They weren't the same positions. This is entirely an attributed disability, an attributed disability that he's a nutcase. Exactly. We're not – and this is a perceived disability case. We don't – Mr. McCallum isn't contending he's a nutcase. He's contending that they're saying, hey – Purely a disability. Yes. Okay. Thank you. Thank you. We'll hear from the other side. May it please the Court, Calvin Keith for Defendant Boise Cascade, LLC. Unless the Court has specific questions on other areas, I'll limit my comments to the areas covered by plaintiff's counsel, primarily the wrongful discharge. Two comments on the wrongful discharge. First of all, that's an exception to the common law. Employment will rule, and for that reason needs to be narrowly construed. And second, that's an exception to the common law. And for that reason needs to be narrowly construed. One of the issues that kind of permeates this case is the concept of termination plus all the applications he made for their discharge. Well, this is all based on, as I understand it, this claim, this common law claim, it's just one based on retaliation. Correct. It has to retaliate. And that was that he complained to Oregon OSHA about safety problems. That's correct. And that even though they were planning a reduction in force in the supervisorial level, that was in progress, that nonetheless, with respect to his possibility of retaining his position, a position there, they didn't, they basically wouldn't consider him because of his complaints to OSHA. That's what I understand the claim to be. That would be the claim. And one of the kind of sub-issues is how far do we expand wrongful discharge, which is, again, is a narrow exception. Well, he's just complaining about retaliation. I mean, I, you know. Well, retaliation would. He complained to OSHA, and he's complaining, and he now alleges that you retaliated against me by not offering me a job that I was qualified for. And I'm comfortable that would be covered under the Oregon statute. I'm less comfortable on wrongful discharge, expanding the concept of wrongful discharge to every job. Why is the district court, why was the district court correct here in granting summary judgment as a matter of law? On the retaliation. On the statutory retaliation claim and the related common law claim. A couple of reasons. Now, let me focus on the wrongful discharge, because the statutory retaliation claim has the additional problem of a lot of the issues that plaintiffs raise are time barred. For example, the hiring in July 2005 is time barred under the state retaliation claim because he filed a bolding charge on that and then did not timely follow up after that claim after he'd gotten a right to sue letter. So the wrongful discharge claim is the only claim that gets us all of the varying applications on each application that he made. Well, let's start with his job. His job was eliminated and merged into five new jobs. He didn't apply for that job. Right. He didn't apply for one of those. So that's out the window. So they're out. There are two other jobs that he didn't apply for, one that he just flat didn't timely apply for and the other one that he never applied for. One occurring in December. The second one, he makes a vague allegation about talking to a supervisor about a job, but he never applied. He applied for the job in July 2005, which would only be considered if you're willing to extend wrongful discharge that far. In that job. That was the process control engineer. The process control engineer. It was given to a demoted individual who had significant pulp and bleaching experience. No one else that applied got the job either. That was the company's proffered reason. He had no rebuttal to that. One of the, and the Court noted this on all of the, and this is typical of promotion cases, the company comes forward with a reason. It's up to the plaintiff to reply and rebut that. The company had a legitimate nondiscriminatory reason for each of these and proffered and there was no reply on any of them. The Vancouver job. That was the process. What was the other one that he actually applied for? He applied for a job in Vancouver, a separate facility, production planner. If you'll look at the job description, it requires production planning kind of skills. He doesn't have them. The person that was hired does have those. It actually requires specific training in that area. He didn't have it. That was really a job outside his purview. And it's kind of from our perspective, that's what this case is on the discharge case. In each circumstance, there's a reason why he didn't get the job and he did nothing to rebut the reasons offered by the company. And that's why summary judgment was appropriately granted. Thank you. Would you like a minute for rebuttal? Would you like to take a minute for rebuttal? You don't have to. Okay, thank you. Thank you.
judges: Kozinski, Fisher, Paez